LORETTA A. GIBSON,

        Plaintiff,

v.                                      Case No.  5:08-cv-370-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

_____

## ORDER

    Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying her application for disability insurance benefits

and Supplemental Security Income.  (Doc. 1.)  The Commissioner has answered (Doc.

10) and both parties have filed briefs outlining their respective positions.  (Docs. 15 &

18.)  For the reasons discussed below, the Commissioner's decision is due to be

**AFFIRMED.**

## I.  PROCEDURAL HISTORY

    On October 27, 2004, Plaintiff filed applications for a period of disability, disability

insurance benefits (DIB), and Supplemental Security Income (SSI) claiming a disability

onset date of October 14, 2002. (R. 17.)[1]  Plaintiff's application was denied initially, and

upon reconsideration. (R. 38-41, 43-48.)  On November 7, 2006, ALJ Philemina M.

Jones conducted Plaintiff's administrative hearing. (R. 480-95.)  On February 23, 2007,

---

[1] Plaintiff's SSDI and SSI applications are not in the record.  According to hearing testimony, Plaintiff's disability onset date is October 14, 2002. (R. 485.) However, the ALJ recorded it as October 14, 2004 in her decision. (R. 17.)

ALJ Jones issued an unfavorable decision. (R. 17-27.)   Plaintiff requested review by the Appeals Council and submitted additional medical records.  (R. 408-79.)  On July 2, 2008, review was denied by the Appeals Council. (R. 5-9.)   Plaintiff then appealed to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] <u>See</u> 42 U.S.C. § 405(g).

[3] <u>See</u> <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); <i>accord,</i> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] <u>See</u> <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] <u>See</u> <u>Foote</u>, 67 F.3d at 1560; <i>accord,</i> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law

defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in

death, or has lasted or can be expected to last for a continuous period of not less than

twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her

previous work, or any other substantial gainful activity which exists in the national

economy.[8]

    The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a

claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was fifty seven (57) years old at the hearing on November 7, 2006. (R. 483-84.) Plaintiff has a high school education and took a course in keypunch. (R. 485.) She worked as a cashier at Winn-Dixie for more than fifteen years. (R. 105.) Plaintiff contends that she has been unable to work since October 14, 2002 due to HIV infection, wrist and hand pain, left leg pain, low back pain, headaches, anxiety, depression, memory and concentration problems. (R. 59-61, 69-70, 72-74.)

At the hearing, Plaintiff testified that she has HIV/AIDS, neuropathy in her left leg, extremely high blood pressure, high cholesterol, bipolar disorder, anxiety, carpal tunnel syndrome, COPD, and repeated bouts with MRSA. (R. 484-87.) Plaintiff testified that

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

as a result of her high blood pressure she has severe headaches and dizziness and she is on three different medications. (R. 491-92.) Plaintiff testified that after standing for 15 minutes or walking for 50 feet, her left leg becomes discolored, cold to the touch, numb and she feels a painful tightening. (R. 487-88.) Plaintiff testified that she stopped drinking alcohol after she was diagnosed with HIV in September 2004. (R. 486.) She testified that a friend does the shopping, housecleaning and cooking because when she stands up she has pain and dizziness. (R. 488-89.) Plaintiff reported short-term memory problems and that she is being treated for depression, anxiety and bipolar disorder. (R. 489.) Plaintiff testified that on a typical day she gets up around 9:00 a.m., takes her medicine and goes to the bathroom and then goes back to bed and watches television. Plaintiff testified that she has not been going to the HIV support group at the Health Department because she does not feel well. She has been nauseated every morning for the past two years, which she assumes is a side effect of her medications, as well as confusion, dizziness, lack of concentration, short-term memory loss and lack of energy. (R. 490, 492.)

Beginning in 1999, Plaintiff was treated by John Gelin, M.D. of Citrus Primary Care for a variety of issues including left shoulder bursitis; neurodermatitis of her hands; bronchitis; sinus problems; urinary problems; headaches; hypertension; panic disorder; depression; and soft tissue injuries as a result of spousal abuse. (R. 173-211, 212-21, 222-50.) On September 5, 2003, Plaintiff was diagnosed with corrosive GERD and treated with Aciphex. (R. 143-44.) On January 17, 2005, Dr. Gelin completed a Treating Source Mental Health Report in which he stated that Plaintiff has "no mental disability." (R. 171-72.)

Plaintiff has a history of carpal tunnel syndrome in her right upper extremity. On August 14, 2001, Terrell B. Bounds, M.D. performed a carpal tunnel release and neurolysis of the median nerve. (R. 115-16.) On December 10, 2001, Dr. Bounds found that Plaintiff's condition had reached maximum medical improvement, with a 15% impairment of the right upper extremity and she was released to return to full duty. (R. 122.)

On June 26, 2004, Plaintiff was seen in the Emergency Room at Citrus Memorial Hospital for a head wound that would not stop bleeding. (R. 157-70.) Plaintiff reported shoulder pain, headache, nausea and dizziness and her blood pressure was recorded as 164/95. In August 2005, Plaintiff returned to the Emergency Room with complaints of left leg and arm numbness and tingling, and headache. (R. 387-90, 394.) She was diagnosed with intermittent paresthesia of the left arm and left leg neuropathy. In October 2006, Plaintiff was treated at the hospital after falling out of a truck, complaining of pain, especially in her head, right hand, left ankle and right knee. (R. 369-71.)

According to Citrus County Health Department records, Plaintiff was diagnosed with HIV on September 30, 2004. (R. 361.) At some point, she was diagnosed with AIDS. In October 2004, Plaintiff's CD-4 cell count was 168 and her viral load was 10,448; in December 2004, Plaintiff's CD-4 cell count was 176 and her viral load was <75; in February 2005, Plaintiff's CD-4 cell count was 270 and her viral load was <75; in June 2005, Plaintiff's CD-4 cell count was 201 and her viral load was <75; in September 2005, Plaintiff's CD-4 cell count was 266 and her viral load was <75; in December 2005, Plaintiff's CD-4 cell count was 310 and her viral load was <75; in March 2006, Plaintiff's

CD-4 cell count was 339 and her viral load was <75; and in June 2006, Plaintiff's CD-4 cell count was 210 and her viral load was <75.

According to Citrus County Health Department records, Plaintiff's "active" problems were: HIV; hypertension; hyperlipidemia; leukopenia; COPD; major depressive disorder, recurrent; bipolar disorder; diabetes mellitus; abnormal pap; multiple wound infections/MRSA; and GERD. (R. 297, 361.)  Her temporary problems were: UTI on November 2, 2004; oral candidiasis on November 16, 2004; vaginal candidiasis on November 16, 2004; bronchitis on February 25, 2005; conjunctivitis on February 13, 2006; and Hemoccult cards x3 on March 22, 2006. (R. 297, 361.)

Treatment notes from mental health providers at Citrus County Health Department dated January 10, 2006, reveal that Plaintiff reported doing well and managing her daily stressors.   (R. 327.) She denied any depression, mania or sleep disturbances and reported that her only complaint was feeling tired. She denied any side effects from medications – Lexapro, Seroquel, Xanax and Trazodone.  On April 10, 2006, Plaintiff again denied feeling depressed, having any appetite or sleep disturbances or having any side effects from her medications. (R. 322.). She reported that she was trying to go fishing as much as possible.

On February 4, 2005, Edward L. Demmi, M.D. performed a consultative examination.  (R. 254-58.)  Plaintiff's chief complaints were wrist pain, dizziness/nausea, diabetes and chronic bronchitis.  Dr. Demmi noted that Plaintiff had been diagnosed with HIV and reported dizziness and nausea since starting antivirals; right and left wrist pain; diabetes that is treated with Glucophage and no reported problems other than occasional headaches; and chronic bronchitis for which she was

8

prescribed albuterol. Plaintiff reported smoking one pack of cigarettes daily for the past 40 years. Plaintiff's blood pressure was reported to be 172/78. With respect to functional limitations, Dr. Demmi concluded that Plaintiff "has no complications due to diabetes"; no deformity, redness, heat, swelling, pain, tenderness or other signs of inflammation of the right forearm; spinal range of motion was normal; motor strength decreased in the hands and wrists at 4/5; grip strength is 4/5 bilaterally; gait is normal; sensory and reflex findings were normal; straight and seated leg raises were normal; and no muscle spasms were noted.

On February 9, 2005, Thomas Hibberd, Ph.D. performed a consultative psychological examination. (R. 260-62.) Plaintiff reported feeling like a "leper" since being diagnosed with HIV and feeling uncomfortable around people and not wanting them to know about her illness. She also reported anger, frustration, depression, poor concentration, sleep disturbance, depression, anxiety and forgetfulness. Plaintiff stated that her "current emotional disturbance has developed since she was diagnosed with AIDS in November." Prior to that, she was "functioning fairly normally" but she was taking Xanax. She began taking Xanax after losing her job in 2002 and that she felt like she needed to stay on it, even when she was functioning well, "just to stay on an even keel." She reported an increase in anxiety and irritability when she tried to go off Xanax. Plaintiff reported performing all of the housework, most of the cooking, going to town and watching television. Dr. Hibberd's mental status examination revealed no abnormalities and he diagnosed Adjustment Disorder with anxiety and depressed mood (Rule out: Alcohol Dependence. Anxiolytic Dependence). Dr. Hibberd noted that Plaintiff's "current depression and anxiety appear to be in reaction to having discovered

that she has AIDS.  It seems likely that she will eventually come to terms emotionally with her condition."

There are two physical residual function capacity ("RFC") assessments of record performed by non-examining state agency physicians – Terry T. Rees, M.D. on April 21, 2005 (R. 269-76) and Vaduvur S. Narayan, M.D. (R. 306-13) on August 23, 2005. Based on a review of the medical records, both doctors found that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday and push and/or pull without limitation.  They also found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and found no postural, manipulative, visual or communicative limitations.

Two non-examining state agency doctors completed Psychiatric Review Technique Forms ("PRTF")– Alan J. Harris, Ph.D. on April 11, 2005 (R. 263-68) and Steven L. Wise, Psy.D. (R. 299-305.)   Both PRTFs reflect that Plaintiff's affective disorders were not severe, imposing only mild or no mental functional limitations.

The ALJ determined that Plaintiff suffers from carpal tunnel syndrome and HIV. (R. 20.)  The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 22-24.)

The ALJ then determined that Plaintiff retained the physical RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand, and/or walk for six hours in an eight-hour workday.  The ALJ further found that Plaintiff should avoid

concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 24.)
Then, relying on the testimony of a VE, the ALJ concluded that Plaintiff was not disabled
because she could perform her past relevant work as a cashier. (R. 26-27.)

Plaintiff submitted additional records to the Appeals Council. On January 26, 2007,
Plaintiff reported having trouble with peripheral vision (R. 414) and was diagnosed with
myopia and presbyopia in May 2007. (R. 415-17.) On February 6, 2008, it was noted
that Plaintiff's diabetes was well controlled and that her COPD was stable on
medication. (R. 431.) Spirometry testing on April 25, 2008 revealed that Plaintiff had
severe obstruction, severe loss of diffusion capacity and probably some air trapping
compatible with severe emphysema. (R. 432.) Plaintiff was counseled to stop smoking.
(R. 421.) On May 5, 2008, Plaintiff was admitted at the hospital with COPD
exacerbation. (R. 445-46.) Plaintiff reported that she had quit smoking two months
earlier.

## IV. DISCUSSION

Plaintiff raises a number of arguments on appeal. First, Plaintiff argues that the
ALJ erred in failing to call a medical expert to testify as to whether Plaintiff's HIV/AIDS
meets or equals a listing. Second, Plaintiff contends that the ALJ failed to properly
evaluate Plaintiff's subjective complaints and reported side effects from medications.
Third, Plaintiff argues that the ALJ's RFC finding and hypothetical question to the
vocational expert were not accurate because they failed to include all of her limitations.

**A.    The ALJ Was Not Required To Call A Medical Expert To Testify
As To Whether Plaintiff's HIV/AIDS Meets Or Equals A Listing**

 Plaintiff contends that the ALJ erred in failing to call a medical expert to the

hearing to testify regarding whether Plaintiff's HIV/AIDS meets or equals the

requirements of Listing 14.08.  Plaintiff points out that a state agency medical consultant

last reviewed the case on August 23, 2005, and found that Plaintiff could perform light

work.  However, after that date, almost 100 pages of medical records from the Citrus

County Health Department were added to the record,  which Plaintiff contends confirm

that Plaintiff has been diagnosed with AIDS and that her CD4 count was extremely low

in June 2006.  (R. 314-407.)

However, even considering this additional medical evidence, substantial record

evidence supports the finding that Plaintiff's condition did not actually or functionally

meet Listing 14.08.  The listing of impairments in the Social Security Regulations

identifies impairments which are considered severe enough to prevent a person from

gainful activity.  By meeting a listed impairment or otherwise establishing an

equivalence, a Plaintiff is presumptively determined to be disabled regardless of his

age, education, or work experience.  Thus, an ALJ's sequential evaluation of a claim

ends if the claimant can establish the existence of a listed impairment.[23]  At this stage of

the evaluation process, the burden is on the plaintiff to prove that he or she is

disabled.[24]   In this Circuit, a plaintiff must present specific findings that meet the various

_____

[23] See Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984).

[24] See Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986); Wilkinson v. Bowen, 847 F.2d 660,
663 (11th Cir. 1987).

tests listed under the applicable listing.[25]  The mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings.[26]

Plaintiff bore the burden of proving that she met or equaled a listed impairment and, in order to do so, Plaintiff had to meet all of the requirements of the listed impairment.  At issue here is Listing 14.08, which requires:

> **14.08** Human immunodeficiency virus (HIV) infection.  With documentation as described in 14.00D3 and one of the following:
> * * *
> B.  Fungal infections:
> 1. Aspergillosis; or
> 2.  Candidiasis, at a site other than the skin, urinary tract, intestinal tract, or oral or vulvovaginal mucous membranes; or candidiasis involving the esophagus, trachea, bronchi, or lungs.

To meet this section, Plaintiff must present evidence of a diagnosis of HIV or AIDS and show a fungal infection such as candidiasis involving the esophagus, trachea, bronchi, lungs, or at a site other than the skin, urinary tract, intestinal tract, or oral or vulvovaginal mucous membranes.  Plaintiff contends that her Candidiasis "may well meet or equal the criteria" of the Listing.  To support her position, Plaintiff relies solely upon evidence of oral and vaginal candidiasis (R. 281, 361) – neither of which are covered by the Listing.  Moreover, there is no evidence suggesting that these were ongoing conditions as they were characterized as "temporary problems" in the records from the Citrus County Health Department. (R. 297, 361.)  Accordingly, substantial

---

[25] See Bell, 796 F.2d at 1353.

[26] See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

13

evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 14.08.

Moreover, because the record provides sufficient evidence to support the ALJ's decision, the ALJ was not required to seek independent expert medical testimony before deciding Plaintiff's claim.[27] Deciding medical equivalence is an issue reserved for the Commissioner, and in cases that proceed to the hearing level, the responsibility for deciding whether a claimant's impairments equal the criteria of a listed impairment rests with the ALJ. As discussed above, substantial evidence supports the ALJ's decision that plaintiff's impairments do not meet or equal Listing 14.08 and the ALJ did not need additional evidence to render her decision.

Further, SSR 96-6p requires an ALJ to obtain an updated medical opinion from a medical expert only when – in the opinion of the ALJ – additional medical evidence may change the state agency medical or psychological consultant's finding that the claimant's impairments were not equivalent in severity to a listed impairment. As discussed above, the medical records submitted after the state agency medical consultant last reviewed the case would not change the state agency medical and psychological consultant's finding that Plaintiff's impairments do not meet or equal a listed impairment. Accordingly, the ALJ was not required to obtain an updated medical opinion from a medical expert.

---

[27] See Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999.)

**B.      The ALJ Properly Evaluated Plaintiff's Subjective Complaints and Medication Side Effects**

Turning to Plaintiff's second argument that  the ALJ failed to properly consider Plaintiff's subjective complaints, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 25-26.)  The ALJ concluded that Plaintiff's allegations and subjective symptoms were out of proportion and inconsistent with the medical evidence and not fully credible.  (R. 26.)

In evaluating disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[28]  The Eleventh Circuit has set forth a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.[29]  The "pain standard", which applies to complaints of subjective conditions other than pain, requires that the plaintiff first produce medical or other evidence of an underlying medical condition.  Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom.[30]

---

[28] 20 C.F.R. § 404.1528.

[29] Id. at 1560.

[30] Id.

15

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[31]  While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[32] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[33]  However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[34]  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision,  "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[35] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[36]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard

---

[31] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[32] Foote at 1562-1563.

[33] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[34] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[35] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[36] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

"threshold"[37] assessment to Plaintiff's subjective complaints.  The ALJ discussed the

Eleventh Circuit standard and stated that she "considered all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of 20 C.F.R. §§

404.1529 and 416.929 and SSRs 96-4p and 96-7p."  (R. 24-26.)  This language, a

paraphrase of the pain standard, along with the supporting findings, shows that the ALJ

applied the pain standard.  Moreover, the ALJ cited 20 C.F.R. § 404.1529, which

contains the same language regarding subjective testimony that the Eleventh Circuit

interpreted when initially establishing the pain standard.[38]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of

showing underlying medical conditions that could be expected to give rise to symptoms.

Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's statements

concerning "the intensity, persistence and limiting effects of these symptoms are not

entirely credible."  In reaching this conclusion, the ALJ found that Plaintiff's allegations

and subjective symptoms are out of proportion and inconsistent with the medical

evidence and are not fully credible.

In support of this conclusion, the ALJ noted that although Plaintiff has been

diagnosed with HIV she "is undergoing treatment for this"; "on January 10, 2006, the

claimant reported doing well and managing her daily stressors", denied any depression,

mania or sleep disturbances, reported her appetite was good, reported that she was

_____

[37] Marbury, 957 F.2d at 839.

[38] See Wilson,  284 F.3d at 1226.

17

compliant with her medications and reported no side effects from them.  Plaintiff contends that while she may be under treatment, "it is apparent that her condition has not significantly improved despite that treatment." Doc. 15 at 14.   However, a diagnosis of HIV/AIDS is insufficient to establish disability; instead, Plaintiff must show the effect of the impairment on her ability to work.[39]

Plaintiff does not identify any specific limitations resulting from HIV/AIDS, other than alleged side effects from Plaintiff's HIV/AIDS medication.  The Eleventh Circuit has held that the ALJ has a duty to investigate the possible side effects of medications taken by a claimant.[40]   The ALJ fulfilled this duty by eliciting testimony regarding Plaintiff's side effects and considered the testimony in her decision.

At the hearing, Plaintiff testified that side effects of her medications include nausea, confusion, dizziness, lack of concentration, memory loss and lack of energy. (R. 484, 489, 490.)   On January 16, 2005, Plaintiff reported on an HIV questionnaire that she had side effects from her medications – anxiety, confusion and sleep difficulties from Sustiva and Truvada; and diarrhea from Glucophage. (R. 61.)  On February 4, 2005, Plaintiff reported dizziness and nausea since starting antiviral medications. (R. 254.)  On September 1, 2005, Plaintiff reported on her "Disability Report – Appeal" that she has side effects from her medication, including drowsiness, fatigue, confusion, dizziness, sleeplessness and loose bowels.  (R. 91, 101.)

---

[39] See Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[40] See McDevitt v. Commissioner of Social Security, 2007 WL 2050910, * 4(11th Cir. 2007.)

18

Notably, however, other than these self-reported symptoms, the record does not disclose any concerns about side effects by the doctors who examined and treated Plaintiff.[41] While Plaintiff reported some of these symptoms to her doctors – nausea, dizziness, memory loss, diarrhea and fatigue (as evidenced by checked boxes on treatment forms) – there is no indication that these symptoms were ever connected to her medications.  (R. 257, 319, 320, 323, 324, 325, 327, 328, 330, 331, 390.)[42] Although Plaintiff testified that she assumes her nausea is a side effect of her various medications,  the medical records appear to connect Plaintiff's nausea to GERD.  (R. 279, 283, 331, 490.)[43]   Moreover, on at least four occasions – November 1, 2005; December 2, 2005; January 10, 2006; and April 10, 2006 – Plaintiff denied having any side effects from her medications to mental health providers at the Citrus County Health Department. (R. 316, 322, 327.)[44]  Finally, the non-examining state agency doctors considered Plaintiff's complaints of pain, nausea, and dizziness in concluding that Plaintiff could perform light work, with some environmental limitations; and no treating or consultative doctor ever found any functional limitations resulting from these symptoms.

Accordingly, Plaintiff failed to provide substantial evidence that side effects limit her ability to work.  Nor does Plaintiff's chart – which lists fourteen medications and the

_____

[41] See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990.)

[42] See Lipscomb. v. Commissioner of Social Security, 2006 WL 2952736, *2 (11th Cir. 2006.)

[43] Plaintiff was diagnosed with GERD on September 5, 2003. (R. 143-44.)

[44] It is unclear whether Plaintiff was referring to all of her medications or just the medications prescribed by the mental health providers – i.e., Lexapro, Seroquel, Xanax and Trazodone.

possible side effects – establish that Plaintiff actually experienced the side effects listed next to the medications.

With respect to Plaintiff's allegations regarding high blood pressure, the ALJ found that they were exaggerated based on the medical evidence of record. In support of this conclusion, the ALJ cited a normal blood pressure reading on May 9, 2006. While the medical records reveal abnormal blood pressure readings on other occasions (R. 283, 281, 279, 277, 387, 331, 330, 328, 326, 342, 325, 324, 369, 323, 321, 320, 319, 339), there is no medical evidence that Plaintiff suffered headaches and/or dizziness as a result of high blood pressure, or that her high blood pressure impacted her ability to work.

As for COPD, the ALJ noted that although Plaintiff reported having COPD, she continues to smoke and she was treated for chronic bronchitis with Albuterol. The record is clear that Plaintiff smoked for more than forty years. Doctors have repeatedly counseled Plaintiff to stop smoking (R. 277, 326, 328, 330, 340, 421) and have linked smoking to her chronic bronchitis and COPD. (R. 310, 421.) Based on the evidence of Plaintiff's breathing concerns, both non-examining state agency doctors concluded that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The ALJ included this limitation in her RFC assessment. Plaintiff has failed to show any functional limitations resulting from Plaintiff's COPD that are greater than those found by the ALJ.

Finally, as to carpal tunnel syndrome, the ALJ correctly noted that Plaintiff underwent right carpal tunnel release on August 14, 2001 and that on December 10, 2001, Dr. Bounds reported that her condition had reached maximum medical

improvement and she was released to return to full duty. On February 4, 2005, Dr. Demmi found that Plaintiff's grip strength and motor strength were slightly reduced at 4/5; however, he found that Plaintiff's fine manipulation was normal. Both of the non-examining state agency doctors expressly considered Dr. Demmi's findings and concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, push and/or pull without limitation and found that Plaintiff had no manipulative limitations. Moreover, although Plaintiff complained of numbness in her hands beginning in June 2005, no treating doctor found that the numbness limited Plaintiff's ability to work, or imposed any functional limitations. (R. 277, 319, 320, 323, 324, 326, 328.)

Accordingly, the ALJ properly evaluated Plaintiff's subjective complaints.

## C. The ALJ's RFC Finding Was Supported By Substantial Record Evidence And His Hypothetical Was Not Flawed

Lastly, Plaintiff argues that the ALJ's RFC finding and hypothetical question to the vocational expert were not accurate because they failed to include all of her limitations and, thus, the ALJ's finding that Plaintiff could perform her past relevant work as a cashier is not supported by substantial evidence. However, as discussed above, the medical evidence does not support Plaintiff's claims that she has limitations beyond those found by the ALJ.

The ALJ found that Plaintiff could perform light work with no concentrated exposure to pulmonary irritants. (R. 24.) In making this finding, the ALJ accorded "great weight" to the non-examining state agency doctor at the reconsideration level. Plaintiff argues that the opinion of the non-examining doctor is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision.

However, the ALJ found that the non-examining state agency doctor's opinions were consistent with the "medical evidence as a whole." Dr. Bounds, who treated Plaintiff for carpal tunnel syndrome, released her to perform full duty work. (R. 122.)  In addition, Dr. Demmi's February 4, 2005 consultative examination was normal except for a minimal decrease in grip strength and motor strength in the wrists and hands at 4/5. And despite this minimal decrease in strength, Dr. Demmi found that Plaintiff's fine manipulation was normal.   Moreover, no other treating or examining source found that Plaintiff had additional limitations.

Plaintiff also argues that the ALJ erred by relying on the outdated opinion of the state agency medical expert "who did not have the benefit of reviewing key medical evidence documenting that [Plaintiff] has AIDS."  As discussed above, however, the diagnosis of HIV/AIDS is not enough – instead, Plaintiff must show the effect of the impairment on her ability to work.[45]  Plaintiff failed to show that Plaintiff's HIV/AIDS resulted in greater limitations than those found by the ALJ.  Because the additional medical evidence submitted after the state agency medical consultant last reviewed the case would not change the state agency medical consultant's RFC finding, there was no need for the ALJ to obtain an updated medical opinion from a medical expert.

Plaintiff also argues that the ALJ gave no explanation for his "obvious rejection of Dr. Demmi's findings that [Plaintiff] has problems with her hands and wrists.  However, despite finding a minimal decrease in grip strength and motor strength in the wrists and hands at 4/5 Dr. Demmi found that Plaintiff's fine manipulation was normal. Moreover,

_____

[45] See Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

the non-examining state agency doctors specifically noted Dr. Demmi's findings on the RFC assessment and they both concluded that Plaintiff had no manipulative limitations. Accordingly, Plaintiff has failed to show (or even explain) how the minor reduction in grip and motor strength would result in greater functional limitations.

Accordingly, the ALJ's RFC finding – that Plaintiff could perform light work with limited exposure to pulmonary irritants – is supported by substantial record evidence. Based on these limitations, the VE testified that Plaintiff could perform her past relevant work as a cashier. The ALJ properly relied upon that testimony and it provides substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a cashier.[46]

## V. <u>CONCLUSION</u>

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter final judgment consistent with this Order and to close the file

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on December 15, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
  All Counsel

---

[46]  Based on the Court's conclusions that the ALJ properly evaluated Plaintiff's subjective complaints and that the ALJ's RFC is supported by substantial evidence, the Court need not address Plaintiff's final argument –i.e., "Given the VE's testimony that, in response to a question which considered Ms. Gibson's credible testimony, that there is no work in the national economy that she can perform, this Court should remand for an award of benefits."